IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

SABRIAN SHUNTE ALEXANDER, #1420553 §

VS.                                      §                    CIVIL ACTION NO. 6:07cv423

JANET DICKERSON, ET AL.                  §

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Sabrian Shunte Alexander, a prisoner previously confined at the Rusk County Jail and currently confined in the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983.  The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The Plaintiff is in custody of the Texas prison system pursuant to Rusk County convictions for forging a financial instrument and evading arrest with a motor vehicle.  On February 16, 2007, pursuant to a plea bargain, he was found guilty in both cases and his sentences were enhanced by two prior felony convictions to eight years confinement in the Texas prison system.  A petition for a writ of habeas corpus filed in this Court challenging his convictions was dismissed with prejudice.  *See Alexander v. Director, TDCJ-CID*, No. 6:07cv483 (E.D. Tex. April 8, 2008).

The original complaint in the present case was filed on September 6, 2007.  The Plaintiff sued Sgt. Janet Dickerson and Deputy Kevin Bisnette.  He complained about an incident that occurred on December 16, 2006, at the Rusk County Jail.  On that day, he was initially confined in H-Tank.  All

1

of the inmates confined in H-Tank turned in their blankets to be washed.  The Plaintiff stated that he was moved to J-Tank before he received a clean blanket.  He asked Sgt. Dickerson for a blanket.  He asserted that a blanket was one of the required necessities.  Sgt. Dickerson was standing outside of the cell.  Apparently, she did not believe him because she had J-Tank searched for an extra blanket.  No blanket was found.  She became upset and complained that he was causing a problem over a simple blanket.  He replied that he was entitled to a blanket and that it was extremely cold in the cells.  Sgt. Dickerson left the area after the search.

The Plaintiff subsequently saw Sgt. Dickerson in the hallway.  Once again, he asked her for a blanket.  She replied that she was on the verge of tasing him for continuously bothering her about a blanket.  When he persisted, Sgt. Dickerson opened the cell door and sent in Deputy Bisnette to use a taser against him.  The Plaintiff asserted that Deputy Bisnette used the taser even though he knew that the Plaintiff was neither causing a threat nor harmful in any way.  The Plaintiff fell to his knees after being shocked by the taser.  Sgt. Dickerson ordered Deputy Bisnette to shock him again.  When he was shocked, the Plaintiff fell on his stomach and rolled over because the metal prongs were hot.  Deputy Bisnette shocked him again for rolling on his back.  The Plaintiff then went into a seizure.  Other inmates complained that the Plaintiff was being shocked excessively.  Deputy Bisnette stopped using the taser, handcuffed the Plaintiff and placed him in a holding cell.  He stayed in the holding cell until December 18, 2006.  He never received any medical treatment even though he constantly complained about burns and bruises on his upper and lower torso due to the excessive use of the taser.  The Plaintiff alleged that the excessive use of the taser has caused him numerous seizures.  He has lingering problems due to the incident and must take medication for his problems.  He asked for compensatory and punitive damages, along with a formal apology from Rusk County.

2

<u>Motion for Summary Judgment</u>

The Defendants filed a motion for summary judgment (docket entry #56) on April 3, 2008. In support of the motion, they filed affidavits from Sgt. Dickerson, Deputy Bisnette, Officer Lee Griego, Lt. Cassandra Shaw, Sheriff Glen Deason and Nurse Shirley Broyles.  They submitted jail records involving the Plaintiff, including incident reports and medical records.  They finally submitted several documents involving policies and procedures.  They argued that they are entitled to summary judgment because the Plaintiff failed to exhaust his administrative remedies, because he was not the victim of excessive use of force or deliberate indifference to his serious medical needs, and because they are entitled to qualified immunity.

The Defendants noted that the Rusk County Jail has a two step grievance process.  They asserted that the Plaintiff was familiar with the grievance process because he had filed fifteen request/ grievance forms during his most recent stay in the jail.  He filed numerous other grievances during his previous stays in the jail.   Nonetheless, he never took advantage of the procedure to express dissatisfaction with the handling of the incident and medical treatment, or lack thereof.  If an inmate is dissatisfied with the response to a grievance, he may request a hearing before the Grievance Review Board.  Finally, if he disagrees with a decision by the Grievance Review Board, the Grievance Officer or the Jail Administrator, then he may appeal to the Sheriff.  The Defendants submitted competent summary judgment evidence showing that the Plaintiff failed to pursue any of his grievance remedies, thus they argued that the lawsuit must be dismissed for failure to exhaust administrative remedies.

The Defendants next argued that the Plaintiff was not the victim of excessive use of force. They asserted that the incident began when Deputy Bisnette and Officer Griego smelled smoke coming from cell H-12, which was the Plaintiff's cell.  All of the inmates in H-Tank were removed, and a

3

search was conducted.  A search of the Plaintiff's cell uncovered a Bible that contained a self-rolled cigarette and a razor blade melted onto the handle of a spoon or toothbrush.  The Bible was confiscated.  The Plaintiff had torn up his sheet, covered his light, and made necklaces and do-rags out of the sheet.  Other contraband was also confiscated.  The Defendants noted that the Plaintiff's infractions would, under other circumstances, have resulted in his reassignment to a single cell.  However, all such cells were occupied.  Thus the Plaintiff was move to J-Tank, an eight man cell.

The Plaintiff began complaining after he was moved to J-Tank.  He complained about not having a sheet and blanket.  Sgt. Dickerson confirmed that he did not have a blanket.  She advised him that he would receive one.  She also advised him that he would not be receiving an additional sheet at that time since he had destroyed the other sheet.  The Defendants asserted that the Plaintiff became angry and proclaimed that he would get what he wanted.  He added that he would stay on the intercom button until he got his way.  He kept saying over and over again that he was going to get what he wanted and his voice became louder with each repetition.  He would not comply with commands to quit, and he responded with profanity.

Sgt. Dickerson noted that she had received taser training and had been tased herself.  She noted that she is five feet two inches tall, 60 years old and petite.  The Plaintiff is six feet tall and 215 pounds.  When the Plaintiff walked towards her and was approximately eight to ten inches from her, she asked Deputy Bisnette if he had the taser.  Sgt. Dickerson stepped aside.  The Plaintiff shouted at her, "shoot me, I don't . . ." and was shot with the taser.  The Plaintiff initially fell to the floor, but he promptly pulled out one of the taser leads.  As he got up, he said , "is that all?"  As he moved towards the Defendants, Deputy Bisnette did not shoot the Plaintiff with another taser lead, but rather readministered with the lead that remained and the one in the Plaintiff's hand.  Sgt. Dickerson stated

4

that the Plaintiff stopped all aggressive behavior after the second tase and was handcuffed by Deputy Bisnette. The Plaintiff was removed from the tank and placed in a holding cell as soon as the occupant of that cell was removed.

The Defendants asserted that Deputy Bisnette used force for the purpose of restoring control over the situation, not for the purpose of causing harm to the Plaintiff. Nurse Broyles examined the Plaintiff after the incident. The Plaintiff was kept in the holding cell and slept all day, where he was constantly observed by jailers on duty. The Plaintiff subsequently apologized to Sgt. Dickerson for "just being stupid." He added that he would "not do that again."

With respect to the medical claim, the Defendants noted that the Plaintiff was examined by Nurse Broyles after the incident. Nurse Broyles specified that she checked the taser marks. She noted that every jail employee, including herself, had been tased. She did not observe anything out of the ordinary about his taser marks. She did not observe him have a seizure. No one on the staff nor any inmates reported to her that he had experienced a seizure. She asserted that the Plaintiff was not denied medical treatment for any medical need. Officer Griego, a licensed paramedic, removed the remaining taser lead. The Plaintiff was provided neosporin, silvadine, gauze and tape to cover the lead mark. The Defendants asserted that no one saw the Plaintiff have a seizure. Sgt. Dickerson specified that no one told her that the Plaintiff had a seizure. She added that she did not observe anything about the Plaintiff that made her believe that there were any medical issues with him as a result of being tased.

The Defendants argued that the Plaintiff was not the victim of excessive use of force or deliberate indifference to a serious medical need. With respect to an excessive use of force claim, they noted that the issue is whether force was used in a good faith effort to maintain or restore discipline,

or maliciously and sadistically for the very purpose of causing harm.  *See Valencia v. Wiggins*, 981

F.2d 1440, 1446-47 (5th Cir.), *cert. denied*, 509 U.S. 905 (1993).  Factors to consider include the need

for the application of force, the relationship between the need and the amount of force used, the threat

reasonably perceived by the responsible officials, and any efforts made to temper the severity of the

forceful response, and the extent of the injury suffered.  *Id.*  They argued that the undisputed evidence

demonstrates that Deputy Bisnette used force for the sole purpose of restoring control over the

situation, not maliciously or sadistically for the purpose of causing harm.  They further argued that they

were not deliberately indifferent to a serious medical need.  Finally, in the context of the qualified

immunity defense, they argued that the Plaintiff has not shown a deprivation of a constitutional right

that was clearly established at the time of the alleged constitutional violation.  *See Wilson v. Layne*,

526 U.S. 603, 609 (1999).  They argued that they are entitled to summary judgment based on qualified

immunity.  The details of their arguments shall be discussed more fully in the Discussion and Analysis

section of this Memorandum Opinion.

<u>Plaintiff's Motion for Summary Judgment</u>

The Plaintiff filed a motion for summary judgment (docket entry #58) on April 4, 2008.  He

provided a list of names of inmates in the tank where the incident occurred.  He did not provide any

affidavits from them in support of his motion.  He again alleged that he was excessively and unlawfully

tased by the Defendants.  He asserted that Sgt. Dickerson's affidavit shows that there were procedural

violations, although he did not identify them.  He asserted that both Defendants' affidavits show that

they acted unprofessionally and in violation of the Rusk County Taser Policy.  Once again, he did not

develop his allegations.  He asserted that he was given nothing more than band aids for his burns,

which resulted in severe scars and bruises on his body.  Without explanation, he asserted that Exhibit

6

Four will show that he did not receive proper medical attention.  He noted that he never received a disciplinary case.  He asserted that he should have received a disciplinary case if he had, in fact, been in possession of contraband.  He asserted that the medical records support his claims about his injuries, although he did not identify where such support is located in the medical records.  He argued that a complete and thorough investigation will support his claims.

Responses to Motions for Summary Judgment

The Defendants filed a response (docket entry #59) to the Plaintiff's motion for summary judgment on April 17, 2008.  They correctly noted that the Plaintiff did not attach proper summary judgment evidence to his motion.  He likewise failed to cite the evidence upon which he was relying. He failed to include a statement of material fact as required by Local Rule 56(a).  They objected to the motion for summary judgment because it does not provide any legal or factual basis for the motion. They characterize the "facts" in the motion as bare allegations of fact, ultimate or conclusory facts, and legal conclusions, which are not sufficient as admissible facts.  *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998).  They went on to reassert matters previously discussed in their motion for summary judgment to reply to his claims.  The Defendants response shall be discussed more fully in the Discussion and Analysis section of this Memorandum Opinion.

The Plaintiff filed a response (docket entry #60) to the Defendants' motion for summary judgment on April 18, 2008.  He argued once again that the Defendants acted in an unprofessional manner when they unlawfully and excessively tased him.  He noted that the motion for summary judgment included contradictory statements as to whether Nurse Broyles was contacted about his condition.  He noted medical requests in the record showing that he complained about chest and knee pain.  He also noted a contradiction where Nurse Broyles stated that she did not observe anything out

7

of the ordinary, while Officer Griego stated that the Plaintiff was provided Neosporin, Silvadine, Gauze and tape due to his burns.  He noted that the medical records do not record that any member of the medical staff checked on him while he was in the holding cell even though the motion for summary judgment stated that he was constantly checked on by the jailers.  He noted that the allegation that he removed one of the taser leads was never mentioned in the incident reports and that it was alleged for the first time in Sgt. Dickerson's affidavit.  He asked that the Defendants' motion for summary judgment be denied.

<u>Discussion and Analysis</u>

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial.  "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.  In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

8

show that there is no genuine issue as to any material fact."  *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted);  Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings.  *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199  (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324.  Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 324.  To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor.  *Anderson*, 477 U.S. at 257.  Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.  The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment.  *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

Courts must employ summary judgment device cautiously.  *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986).  In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations."  *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The dispositive issue in this case concerns the Defendants' argument that the case should be dismissed because the Plaintiff failed to exhaust his administrative remedies.  Congress has mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court reviewed the statute and unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001).  *See also Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001).  The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  More recently, the Supreme Court reiterated that the exhaustion requirement is mandatory and that exhaustion means proper exhaustion, including compliance with an agency's deadlines and other critical rules.  *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).  An inmate may not bypass administrative review without risk of sanction.  *Id.* at 2390.  The exhaustion requirement applies to county jail inmates bringing civil rights lawsuits about matters that occurred in a jail.  *See, e.g., Teixeira v. Gregg County Jail*, 74 Fed. Appx. 388 (5th Cir. 2003).  The Defendants have submitted competent summary judgment evidence showing that the Plaintiff failed to exhaust his administrative remedies with respect to any of his claims.  The Plaintiff has not presented any evidence to rebut the evidence.  The Defendants are entitled to summary judgment because the Plaintiff failed to exhaust his administrative remedies.

Typically an inmate's failure to timely exhaust his administrative remedies warrants dismissal of a civil rights lawsuit with prejudice.  *See, e.g., Johnson v. La. ex rel. La. Dep't of Public Safety & Corr.*, 468 F.3d 278, 280-81 (5th Cir. 2006); *Johnson v. Ford*, No. 06-41082, 2008 WL 118365 (5th Cir. Jan. 14, 2008) (unpublished).  An exception occurs when there are no time deadlines for an inmate to file a grievance in a jail's grievance policy.  *See, e.g., Allard v. Anderson*, No. 05-10019, 2007 WL 4561110 (5th Cir. Dec. 28, 2007) (unpublished).

In the present case, the Rusk County Jail Grievance Plan does not include a deadline for filing grievances, thus the present lawsuit should be dismissed without prejudice for failure to exhaust administrative remedies.   The Plaintiff may refile the lawsuit once he exhausts his administrative remedies.   In dismissing the lawsuit without prejudice, the Court expresses no opinion on the merits of the Plaintiff's claims.   It is accordingly

**ORDERED** that the Defendants' motion for summary judgment (docket entry #56) is **GRANTED** and the lawsuit is **DISMISSED** without prejudice.   All motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 22nd day of April, 2008.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE